IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OFER AHUVIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. No. 10-00648 ACK-BMK |
| | ) |
| WYNDHAM VACATION RESORTS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT, DATED NOVEMBER 13, 2013

BACKGROUND

This case arises from Plaintiff Ofer Ahuvia's ("Plaintiff" or "Ahuvia") termination of employment from Defendant Wyndham Vacation Resorts, Inc. ("Defendant" or "Wyndham").  On November 13, 2013, this Court issued an Order Granting in Part and Denying in Part Defendant's Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment ("Summary Judgment Order").  ECF No. 118.  A more extensive procedural and factual background of this case may be found in this Court's Summary Judgment Order.  For the purposes of addressing the current motion, the Court sets forth the relevant background as follows.

-1-

Plaintiff was born in 1951 in Israel. (Def.'s Concise Statement of Facts ("CSF") at 1, ¶ 6; Plntf.'s CSF at 2.)[1] Wyndham hired Plaintiff as a sales representative in April 2002 to work at its sales office located in Honolulu, Hawaii. (Def.'s CSF at 1, ¶ 7; Plntf.'s CSF at 2.)  Plaintiff alleges that he was a "top producer and salesperson" for Wyndham.  (Second Amended Complaint ("SAC") ¶¶ 21-22.)

Plaintiff alleges that, beginning in 2006, Wyndham "management employees," openly favored another in-house salesperson, Aline Lam, an Asian female in her early thirties. (SAC ¶¶ 35, 38.)  Plaintiff makes numerous allegations of favoritism toward Ms. Lam, including: that the sales assignment rotation was manipulated, in violation of company policy, to give Ms. Lam more favorable sales assignments; that Ms. Lam arrived late for work and meetings but was not disciplined; that Ms. Lam received an unwarranted bonus; that Ms. Lam made inappropriate claims about tax advantages and the possibility of rental income during a sales pitch in violation of company policy, but was never disciplined; that Ms. Lam did not complete her own paperwork, in violation of company policy; and that Ms. Lam violated company policy prohibiting loitering in the sales

---

[1] The Court uses Defendant's and Plaintiff's concise statements of facts that were filed to address Defendant's Motion for Summary Judgment to establish the background for Plaintiff's Motion for Reconsideration.

office, but was never disciplined.  (SAC ¶¶ 38, 40, 44-48, 50-52, 61-64, 72-78.) Plaintiff further alleges that Aly Hirani, a manager-level employee, had a sexual relationship with Ms. Lam, in violation of company policy.  (Id. ¶ 60.)  Plaintiff states that he complained about the breaches of company policy and incidents of favoritism shown toward Ms. Lam to his sales manager, but nothing was ever done about his complaints. (Id. ¶ 87.)

According to Plaintiff, Charles Barker, the Vice President of In-House Sales at the Wyndham office in Waikiki, attempted to address complaints of favoritism toward Lam in July 2007 by issuing written policies and procedures and asking all employees to sign them. (SAC ¶¶ 67-70, 72.)  Plaintiff also alleges that Barker asked one of Plaintiff's coworkers, Christopher Beecham, another Wyndham salesperson, to monitor and report on anything Barker should be aware of when he was absent. (Id. ¶ 74.)

On September 21, 2007, Beecham (born in 1942) wrote and delivered a letter to Barker titled "Internal Problems," which set forth the allegations of favoritism towards Ms. Lam ("Internal Problems Letter" or "Letter").  (Id. ¶ 89; Plntf.'s CSF at 6, ¶ 43; Beecham Decl. ¶ 7 & Ex. 21.)  Plaintiff and three other Wyndham sales agents (Jody Myers (born in 1956), Garth Starks (born in 1974), and Bill Groten (born in 1972)) signed the

-3-

Letter.  (Id.; Def.'s CSF at 3, ¶¶ 28-30; Plntf.'s CSF at 2.)
Myers, Starks, and Groten partially withdrew their support soon
thereafter; in general, they indicated that they witnessed some
of the events but did not support all of the allegations in the
Internal Problems Letter.  (Plntf.'s CSF Exs. 30-32, ECF No. 101-
8.)  The Letter states that, if no internal resolution can be
found, the employees would complain to a "higher authority."
(Plntf.'s CSF at 6, ¶ 43.)  The Letter did not mention that the
favoritism was based on the classes of sex, age, or any other
form of illegal discrimination. (See Beecham Decl. Ex 21.)
Plaintiff specifically alleges that Wyndham retaliated against
him for signing the Letter by giving him a written warning on the
same day that the Letter was delivered.  (SAC ¶ 93.)

     In September of 2004, Wyndham received a customer
complaint about Plaintiff that resulted in a written warning for
giving tax advice during a sales presentation, as well as other
violations of Wyndham's Sales Compliance Rules ("First Warning").
(Def.'s CSF at 2, ¶ 15; Plntf.'s Depo. Ex. 15.)  Plaintiff claims
that he followed Wyndham guidelines and did not do anything
wrong, but that he was warned that if he did not sign the written
warning, his employment would be terminated. (Plntf.'s CSF at 3,
¶ 12.)  The First Warning was issued to Plaintiff from Turolla,
Wyndham's Senior Vice-President of Sales and Marketing.

(Plntf.'s CSF Ex. 3, ECF No. 101-7, Decl. of Turolla at ¶ 2, ECF No. 82-1.)

On January 24, 2006, Plaintiff received a second written warning from his supervisor, Jody Myers, for violating the Sales Compliance Rules sometime in January 2006 by allegedly making false and misleading statements to customers ("Second Warning").  (Def.'s DSF at 2, ¶ 17.)  Plaintiff disagrees with this warning as well, and states that the accusations in the warning were exaggerations and fabrications, and that Myers told Plaintiff he would be terminated if he did not sign the warning. (Plntf.'s CSF at 3, ¶ 13.)

On September 21, 2007, Wyndham issued a third and final written warning (the First Warning was also called a "final" written warning) to Plaintiff regarding an alleged violation of the Sales Compliance Rules ("Third Warning").  (Def.'s CSF at 2, ¶ 24; Pltf.'s CSF at 6, ¶ 44 & Ex. 22; Plntf.'s CSF Ex. 3, ECF No. 101-7, )  The Third Warning appeared to be issued by Turolla. (Plntf.'s CSF Ex. 22.)  However, in an email dated September 12, 2007, from Jeff Myers, Wyndham's Executive Vice President of Sales located in Orlando, Florida, Turolla was directed by Myers to issue the Third Warning.  Def.'s CSF Ex. C at D-OA 00210, ECF No. 82-8.  As a result of this warning, Plaintiff was disqualified from a sales incentive program called the "President's Club," which included a trip and a Rolex watch.

(Id.) Plaintiff also contests the legitimacy of the Third Warning. (Plntf.'s CSF at 6, ¶¶ 45, 46, SAC ¶¶ 97-99.)

On February 21, 2008, Wyndham terminated Plaintiff's employment after receiving a written complaint from a customer named Mr. Newhall ("Newhall Complaint"). (SAC ¶¶ 109, 119.) Mr. Newhall complained that Ahuvia had tricked him into buying a timeshare by promoting it as a rental investment on January 21, 2007. (Newhall Decl. ¶ 20 & Ex. D, at D-OA 00009, 00218-00220.) Mr. Newhall stated that Plaintiff referred him to a specific rental agent, who could help him rent out his timeshare unit. (Id.) Plaintiff's alleged conduct, if true, would have violated Wyndham's Sales Compliance Rules prohibiting salespeople from "[r]ecommending or endorsing a specific rental company." (Def.'s CSF at 4, ¶ 50; Plntf.'s CSF at 2.).

Plaintiff filed his Second Amended Complaint alleging, inter alia, that Defendant retaliated against Plaintiff for complaining about favoritism that was allegedly shown toward Lam. See Second Amended Complaint ("SAC") at ¶¶ 132-147, ECF No. 24. Defendant filed a Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment on May 29, 2013 ("Motion for Summary Judgment"), along with a Concise Statement of Facts ("CSF"). ECF Nos. 81 & 82. The parties submitted briefing on the Motion for Summary Judgment, and this Court held a hearing on October 28, 2013. ECF No. 109. The Court issued its Summary

Judgment Order on November 13, 2013.  ECF No. 118.  In the Summary Judgment Order, the Court ruled, inter alia, that Defendant's Motion for Summary Judgment was granted as to Plaintiff's Title VII, Age Discrimination in Employment Act ("ADEA"), and Haw. Rev. Stat. § 378-2 retaliation claims.  Id.

On November 27, 2013, Plaintiff filed a Motion for Reconsideration of this Court's Summary Judgment Order ("Motion for Reconsideration"), asking for reconsideration of this Court's retaliation ruling.  ECF No. 130.  Defendant filed an Opposition to the Motion for Reconsideration on December 16, 2013.  ECF No. 143.  The Court determines that this matter may be addressed without a hearing under Local Rule 7.2(e).

**STANDARD**

**I. Motion for Reconsideration**

A motion for reconsideration must (1) "demonstrate reasons why the court should reconsider its prior decision" and (2) "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  Hele Ku KB, LLC v. BAC Home Loans Servicing, LP, 873 F. Supp. 2d 1268, 1289 (D. Haw. 2012).  The Ninth Circuit has held that reconsideration is appropriate if (1) the district court is presented with "newly discovered evidence," (2) the district court "committed clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law."  Nunes v.

-7-

<u>Ashcroft</u>, 375 F.3d 805, 807 (9th Cir. 2004).  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  <u>Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003).

<u>**DISCUSSION**</u>

**I.  Whether This Court Should Reconsider its Causation Ruling on Plaintiff's Retaliation Claim**

Plaintiff argues that this Court should reconsider its Summary Judgment ruling regarding Plaintiff's retaliation claim because (1) Plaintiff and others voiced their concerns prior to September 12, 2007, (2) Turolla knew of the Internal Problems Letter on Friday, September 21, 2007, and (3) even if there is no causal connection between the Internal Problems Letter and the Third Written Warning, there is a causal connection between the Internal Problems Letter and Plaintiff's termination in February of 2008.  <u>See</u> Plntf.'s Motion at 3-12, ECF No. 130-2.

As the Court stated in its Summary Judgment Order, to establish a prima facie case of retaliation, Plaintiff must provide evidence of the following:  "(1) [he] engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the two." <u>Surrell v. California Water Serv. Co.</u>, 518 F.3d 1097, 1108 (9th Cir. 2008).

**A. Plaintiff's Alleged Spring and Summer 2007 Complaints**

Plaintiff's first argument is that, even if there is no causal connection between the Internal Problems Letter and the issuance of the Third Written Warning, Defendant retaliated against Plaintiff for making complaints during the spring and summer of 2007.  In support of his argument that he made such complaints, Plaintiff claims that the record contains evidence that policies and procedures were drafted before September 21, 2007, to address Lam's practice of hanging out in the manager's offices.  <u>See</u> Plntf.'s Motion at 3-4.

First, the Court notes that the complaint leading to the change in policies and procedures originated from Beecham, who had a meeting with Barker.  <u>See</u> Plntf.'s Recon. Motion Ex. 4, ECF No. 130-6.  Plaintiff does not present any evidence that he was present at the meeting with Barker to complain about the favoritism toward Lam.[2/]  Second and more importantly, Plaintiff failed to present any evidence in his Opposition or his Motion for Reconsideration that either Turolla or Jeff Myers knew of any of Plaintiff's alleged complaints about favoritism or discrimination in the spring or summer of 2007.  Even if Plaintiff had complained to Barker, there is no evidence that Barker transmitted any such alleged complaint to Turolla or Jeff

---

[2/] As Defendant notes in its Opposition, Plaintiff's declaration does not indicate that he complained to Barker about Lam's presence in the sales office.  <u>See</u> Decl. of Ahuvia at 17, ¶ 84, ECF No. 101-1; Def.'s Opp. at 5-6, ECF No. 143.

Myers.  As a result, Plaintiff failed to present evidence establishing a causal connection between his alleged spring and summer "complaints" and Turolla's and Jeff Myer's decision to issue the Third Written Warning.

Regarding the incident involving Plaintiff's complaint of the managers' error in rewarding Aline Lam with top salesperson of the month and an accompanying $1,000 bonus, Plaintiff again produces no evidence that Turolla or Jeff Myers knew of Plaintiff's complaint.  In the Internal Problems Letter itself, Beecham states that Barker should not be held responsible for the events involving the lack of recognition regarding Ahuvia's bonus and the President's Council award because Barker had been absent during those times.  Plntf.'s Ex. 4 at P30061, ECF No. 130-6.  Plaintiff fails to present any evidence that Turolla or Jeff Myers knew of Plaintiff's complaint about the bonus during the spring or summer of 2007.  In fact, Plaintiff himself submits an email from Turolla to Barker dated September 22, 2007, where Turolla asks Barker "Is it true that Aline received the 1k and was really in 2nd place?"  See Plntf.'s CSF Ex. 26 at D-OA 01056, ECF No. 101-8.  This statement indicates that Turolla first received knowledge of the incident via the September 21, 2007 Internal Problems Letter; he apparently had no knowledge of Plaintiff's complaint during the summer of 2007.

Plaintiff also contends that this Court committed manifest error by characterizing Plaintiff's spring and summer complaints as a "paramour" claim.  The Court first observes that its reference was in relation to Plaintiff's Exhibit 35, which consists of a letter from Human Resources Regional Director Andrea Ward.  <u>See</u> Summary Judgment Order at 53, n. 20.  Exhibit 35 discusses the complaints Wyndham received from Lam's alleged affair with her manager, which does not support Plaintiff's retaliation claim for the reasons discussed in this Court's footnote 20 of the Summary Judgment Order.  To the extent that Plaintiff's complaints in the summer as documented by the Internal Problems Letter were not related to Lam's affair, the Court did not commit manifest error because Plaintiff failed to produce any evidence of causation between the summer 2007 complaints and Turolla's and Jeff Myer's decision to issue the Third Written Warning, as discussed above.[3/]

**B.  Turolla's Knowledge of the September 21, 2007 Internal Problems Letter**

---

[3/] Plaintiff attaches a 2006 case from the Tenth Circuit involving Turolla and Wyndham's predecessor, Fairfield, in which a female plaintiff won a jury verdict for a claim involving retaliation.  <u>See</u> Plntf.'s Motion at 11-12, ECF No. 130-2 (citing <u>McInnis v. Fairfield Cmtys., Inc.</u>, 458 F.3d 1129 (10th Cir. 2006).  Besides the fact that this case is not relevant as to whether or not Turolla retaliated against Plaintiff in the present case, Plaintiff had the opportunity but did not present this case during the briefing for Defendant's Motion for Summary Judgment.  Accordingly, this case does not provide a basis for reconsideration.

Plaintiff also argues that Turolla knew about the September 21, 2007 Internal Problems Letter on September 21, 2007, which would create an inference that the Third Warning was connected to the Internal Problems Letter.  See Plntf.'s Motion at 4-6, ECF No. 130.  However, Plaintiff fails to address the United States Supreme Court's decision, Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001), which was thoroughly discussed in this Court's Summary Judgment Order.  See Summary Judgment Order at 50-52, ECF No. 118.  Even if the Court assumes that the Henao declaration may indicate that Turolla knew of the Internal Problems Letter on September 21, 2007, the decision to issue the Third Written Warning had been made by Jeff Myers on September 12, 2007.  See Def.'s CSF Ex. C at D-AO 00210, ECF No. 82.  Accordingly, the Court did not make a manifest error of law or fact in concluding that there was no causation between the Internal Problems Letter and Plaintiff's Third Written Warning.

## C. Plaintiff's Termination in February 2008

Plaintiff's next argument, newly raised in one sentence in his Motion for Reconsideration, is that Turolla retaliated by terminating Plaintiff from his position in February of 2008.  See Plntf.'s Motion at 6, ECF No. 130-2.  The Court observes that in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff did not argue that Plaintiff's termination in

February of 2008 was an adverse employment action caused by the September 21, 2007 Letter.  See Plntf.'s Opp. at 26-27, ECF No. 102.  The adverse employment action he identified in his Opposition was the Third Written Warning issued on September 21, 2007.  Id.  Additionally, Plaintiff never pled in his Second Amended Complaint that his termination was a result of the Internal Problems Letter; he alleges that Wyndham retaliated by giving him the Third Written Warning.  SAC at 24-25, ¶¶ 93, 97, ECF No. 24.

Nevertheless, the Court notes that Plaintiff attached Henao's Declaration to his Concise Statement of Facts in Support of Memorandum in Opposition to Defendant's Motion for Summary Judgment; and, although not argued by Plaintiff in opposing Defendant's Motion for Summary Judgment, that the Henao Declaration does raise a question of fact as to whether or not the Internal Problems Letter played a factor in the February 2008 decision to terminate Plaintiff.  Decl. of Henao at 6, ¶ 36, ECF No. 101-4.  In his declaration, Henao states that he heard Turolla say to Barker, "The letter that Christopher Beecham and Ofer Ahuvia submitted to HR regarding the manipulation of the rotation in the In House line risks our position and employment because it documented that we had acted against the policy of

Wyndham in the In House line."[4/]  <u>Id.</u> at ¶ 35.  Additionally, Henao states that Turolla suggested that they "find a way to get rid of Christopher Beecham and Ofer Ahuvia."[5/]  <u>Id.</u> at ¶ 36.

The Court observes that the comments in the Henao declaration do not show that Turolla and Barker desired to terminate Plaintiff's employment because of discrimination against Plaintiff's race, age, or national origin.  <u>See</u> Decl. of Henao at 6, ¶¶ 35-36, ECF No. 101-4.  Instead, the comments demonstrate that Turolla and Barker were concerned that the favoritism toward Lam resulting in the violations of Wyndham's company rules could adversely impact their own employment with

---

[4/] The Court notes that Henao has also filed claims against Wyndham for alleged discrimination.  <u>See</u> <u>Henao v. Wyndham Vacations Resorts, Inc.</u>, Civ. No. 10-00772 SOM/BMK, 927 F. Supp. 2d 978 (D. Haw. 2013).

[5/] Plaintiff also refers in his Motion to the depositions of Barker and Turolla that were taken after this Court issued the Summary Judgment Order.  Plntf.'s Motion at 5, ECF No. 130-2. The Court declines to consider Plaintiff's arguments based on these depositions because they were not brought before the Court to oppose Defendant's Motion for Summary Judgment, nor has Plaintiff demonstrated that such evidence constitutes "newly discovered" evidence because the depositions could have been produced before the hearing.  <u>See</u> <u>Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.</u>, 764 F.2d 604, 609 (9th Cir. 1985) ("the movant is obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing").  Moreover, Plaintiff has not shown that these depositions would establish any retaliatory evidence.  <u>See</u> Plntf.'s Motion at 5, ECF No. 130-2.  Furthermore, Plaintiff could have moved under FRCP 56(d) to continue the Summary Judgment hearing to a date after the depositions had been taken, but Plaintiff did not do so.

Wyndham.  Id.  Notwithstanding these observations, Henao's statements indicate that there may be causation between Plaintiff's termination in February 2008 and the Internal Problems Letter.

## II. Protected Activity

Because the Court finds that Plaintiff has raised an issue of fact regarding causation between the Internal Problems Letter and his termination from employment in February 2008, the Court will now examine whether or not Plaintiff presents evidence that the Internal Problems Letter is a protected activity.  The Court in its Summary Judgment Order had found it unnecessary to address whether or not the Internal Problems Letter and Plaintiff's verbal complaints associated therewith constituted a protected activity because Plaintiff had not established causation between his complaints and the Third Written Warning. Summary Judgment Order at 53, n. 21, ECF No. 118.

Plaintiff's evidence of causation in the form of the Henao declaration only mentions the Internal Problems Letter. The declaration does not support a finding of causation between Plaintiff's alleged complaints that were not included in the Letter and his termination in February of 2008.  Decl. of Henao at 6, ¶ 35-36, ECF No. 101-4.  Therefore, the Court only examines the Internal Problems Letter as a possible protected activity for Plaintiff's retaliation claims.

In order to constitute a protected activity, "the opposed conduct must fairly fall within the protection of Title VII [or the ADEA]." Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988). However, the Ninth Circuit has stated that the anti-retaliation provision in Title VII, and accordingly the ADEA, protects an employee who has a "reasonable belief that the employer has engaged in an unlawful employment practice," even if the practice itself was not actually discriminatory or otherwise unlawful. Moyo v. Gomez, 32 F.3d 1382, 1385, amended, 40 F.3d 982 (9th Cir. 1994); Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411-12 (9th Cir. 1987).[6/] "The reasonableness of [a plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard – one that makes due allowance, moreover, for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." Id. at 1385-86.

In this case, Plaintiff fails to raise a genuine issue of material fact that he signed the Internal Problems Letter to express a "reasonable belief" that Wyndham engaged in discrimination on the basis of race, age, or national origin. See Moyo, 32 F.3d at 1385; Plntf.'s Opp. at 24-25, 27-28, ECF No.

---

[6/] The Court uses Title VII cases to draw relevant legal principles because the courts have ruled that Title VII case law applies to ADEA retaliation claims. Merrick v. Farmers Ins. Grp., 892 F.2d 1434, 1441 (9th Cir. 1990) and Yap v. Slater, 165 F. Supp. 2d 1118, 1126 (D. Haw. 2001).

102.   The Internal Problems Letter contains no references indicating that Plaintiff opposed Wyndham's practices because of a discriminating bias toward the protected classes of race, age, or national origin.[7/]  See Plntf.'s CSF Ex. 16, ECF No. 84-7. Rather, the Internal Problems Letter makes approximately half a dozen references to the managers' unfair "favoritism" toward Lam, which is not the same as opposing discrimination against a protected class.  Id.; see Lee v. Potter, 2008 WL 4449568 (N.D. Cal. 2008) (affirmed by Lee v. Potter, 358 Fed. Appx. 966 (9th Cir. 2009)) (granting summary judgment because signing a petition against "favoritism" and "management decisions based on personal agendas and biases" did not constitute a protected activity since the petition did not mention unlawful discriminatory employment practices), Guitron v. Wells Fargo Bank, N.A., C 10-3461 CW, 2012 WL 2708517 (N.D. Cal. July 6, 2012) (complaints that company displayed "favoritism to particular employees" did not constitute protected activity), see Martin v. Budget Rent-A-Car Sys. Inc., 432 F. App'x 407, 412 (5th Cir. 2011) (affirming summary judgment despite plaintiff's use of the words "favoritism" and "discrimination" because plaintiff's complaint involved favoritism based on friendship with the manager as opposed to class discrimination), Barber v. CSX Distribution Servs., 68 F.3d

---

[7/] The Court observes that Beecham wrote and delivered the Internal Problems Letter to Barker, but apparently Plaintiff was present at the delivery of the Letter.

694, 702 (3d Cir. 1995) ("A general complaint of unfair treatment does not translate into a charge of illegal age discrimination."), <u>Tomanovich v. City of Indianapolis</u>, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").

In <u>Jurado v. Eleven-Fifty Corp.</u>, the Ninth Circuit affirmed the district court's summary judgment order because the plaintiff failed to produce evidence that he engaged in a protected activity.  813 F.2d 1406, 1411-12 (9th Cir. 1987).  The plaintiff, a radio disc jockey, was terminated from employment after he refused to use only English on the radio as opposed to speaking in both English and Spanish.  <u>See</u> <u>id.</u> at 1408-09.  The plaintiff had complained to the company that the English-only format would hurt his numbers and his success on the radio because a lot of his numbers "were from Hispanic people."  <u>Id.</u> at 1411-12.  The Ninth Circuit concluded that expressing concerns over personal success was not a protected activity; the plaintiff did not complain to the company that the action constituted discrimination against him or other Hispanics.  <u>Id.</u>

While Plaintiff in his declaration dated October 8, 2013, now states that he believed that Lam received better sales tours because of her age (<u>see</u> Decl. of Ahuvia at 20, ¶ 97, ECF

No. 101-1); his deposition taken on April 1, 2013, indicates that he thought that the favoritism toward Lam "affected everybody," regardless of race, national origin, or age.  Deposition of Ahuvia, Def.'s CSF Ex. I at 308, ECF No. 82-15.  Similar to the complaint in Jurado, Plaintiff does not indicate that he opposed the unfair practices as discriminatory toward a protected class. Instead, Plaintiff admits that he thought that Lam was attempting to "manipulate" and "gets [sic] more income or money and more favoritism."  Id. at 309.  Plaintiff stated that Lam's manipulation to obtain more tours "affected all of us," regardless of race, national origin, or age.  Id. at 315.

For example, the preferential treatment discussed in the Internal Problems Letter and at Plaintiff's deposition, involving Lam's receipt of three tours while Groten only obtained one, fails to demonstrate that Plaintiff protested age discrimination because Groten was a younger employee in his 30's. See Def.'s CSF Ex. I at 311-12, 315, ECF No. 82-15. Additionally, Plaintiff stated that the harm he suffered and protested was that Lam's conduct "harmed me as the bottom line . . . If somebody gets money they don't deserve, it affects the bottom line of the company."  Def.'s CSF Ex. I at 319, ECF No. 82-15.  This type of complaint based on concerns of personal or company success is not a protected activity.  Jurado, 813 F.2d at 1412-13.  The Ninth Circuit has held that a party "opposing

-19-

summary judgment cannot create a genuine question of fact by contradicting his prior sworn statement." Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1410 (9th Cir. 1987). The Court therefore determines that Plaintiff's declaration is not sufficient to create a genuine issue of material fact in light of his statements at his deposition.[8/]

The Court also rejects Plaintiff's argument that the Internal Problems Letter was transformed into a protected activity merely because three of the signers, Garth Starks, Jody Myers, and Bill Groten, submitted their own letters minimizing their role in the Internal Problems Letter. See Plntf.'s Opp. at 25, ECF No. 102. Plaintiff encourages the Court to infer that the complaints in the Internal Problems Letter were about age discrimination because "three of the five [signers], including those younger salespersons outside of the class, recanted and withdrew their support of the September 21, 2007 letter." Id. at 25. The Court observes that one of the signers who later partially withdrew her support, Jody Myers, was over 50 years old and fell within the ADEA's protected class of age; this refutes Plaintiff's inference that the age of the remaining signers

_____

[8/] Plaintiff also states in his declaration that the Internal Problems Letter "described discriminatory practices at WYNDHAM which violated state and federal civil rights and other laws." Decl. of Ahuvia at 22, ¶ 101, ECF No. 101-1. This statement is also refuted by his deposition testimony that he protested the favoritism because it affected "everybody." Def.'s CSF Ex. I at 308, ECF No. 82-15.

indicated that they were protesting age discrimination.  Def.'s CSF at 3, ¶¶ 28-30; Plntf.'s CSF at 2.

Additionally, according to Plaintiff's argument, any employee who falls within a protected class and makes a complaint, regardless of the content, can argue that such complaint is a protected activity merely because of the plaintiff's class status.  The Court has not found, and Plaintiff has not submitted, any cases supporting such a broad interpretation of the protected activity element.  In fact, the case law supports the conclusion that a protected activity must be based at least in part on the nature of complaint instead of merely the class status of the complainer.  See Jurado 813 F.2d at 1410 (plaintiff of Mexican-American descent did not establish protected activity by complaining about company's decision to use an English-only format because complaint involved personal success instead of unlawful discrimination).  The fact that three signers later downplayed their involvement in the Internal Problems Letter did not transform the complaints about favoritism in the Internal Problems Letter into complaints against unlawful discrimination on the basis of race, age, or national origin.

Although Plaintiff in the Internal Problems Letter stated that the signers may seek a "higher authority" if the company procedures did not provide a satisfactory result, Plaintiff clarifies in his deposition that the "higher authority"

referred to Franz Hanning, the Wyndham President and Chief
Executive Officer who was located in Orlando, Florida, in July of
2009.  Plntf.'s CSF Ex. 21 at P30060, ECF No. 101-7; Def.'s CSF
Ex. I at 305-306, ECF No. 82-15 (AHUVIA: "If it's not resolved,
we take the option to take it higher."  DEFENDANT'S COUNSEL: "And
higher authority would be who next?"  AHUVIA: "Orlando,
Florida").

        Plaintiff in his deposition on April 1, 2013, never
states that his reference to the "higher authority" meant the
EEOC; although he now states in his October 8, 2013 declaration
attached to his Opposition that he did mean the EEOC "and/or
Wyndham corporate headquarters on the mainland." <u>See</u> Decl. of
Ahuvia at 23, ¶ 103, ECF No. 101-1.  However, as mentioned above,
Plaintiff's deposition, not his declaration, establishes his
testimonial evidence for purposes of a motion for summary
judgment. <u>Jurado v. Eleven-Fifty Corp.</u>, 813 F.2d 1406, 1410 (9th
Cir. 1987).  Plaintiff may not conjure an issue of fact by adding
allegations in his declaration that are contrary to his answers
at his deposition. <u>Id.</u> at 1410.  Based on the explanations in
the Internal Problems Letter and Plaintiff's deposition,
Plaintiff's evidence demonstrates that he opposed the favoritism
toward Lam because it decreased workplace morale, violated
workplace rules, and was unfair to everybody, not because he had
a reasonable belief that Wyndham was discriminating against a

protected class.  Accordingly, the Court determines that Plaintiff fails to raise a genuine issue of material fact as to whether or not Plaintiff's Internal Problems Letter or his summer 2007 complaints constituted a protected activity.

Regarding the state law claims, the Internal Problems Letter and Plaintiff's summer of 2007 complaints do not constitute a protected activity under Haw. Rev. Stat. § 378-2. In <u>Gonsalves v. Nissan Motor Corp. in Hawaii</u>, the Hawai'i Supreme Court held that an employee's memorandum to his employer was not a protected activity because the allegations merely involved a fellow employee's attitude and conduct that created a negative work environment.  100 Haw. 149, 163, 58 P.3d 1196, 1210 (2002). The plaintiff's memorandum actually referred to the EEOC guidelines and accused another employee of creating a "hostile working environment"; however, the Hawai'i Supreme Court found that the actual complaints about the fellow employee did not involve unlawful discrimination on the basis of a protected trait.  <u>Id.</u>  In this case, the complaints in the Internal Problems Letter about Lam's alleged attempts to manipulate Wyndham managers and the manager's alleged favoritism do not concern a protected trait.  <u>See</u> Plntf.'s CSF Ex. 21, ECF No. 101-7.  Therefore, Plaintiff's submission of the Internal Problems Letter and his related complaints do not constitute a protected activity under Haw. Rev. Stat. § 378-2.  <u>Gonsalves</u>, 100 Haw. at

163.  As a result, the Court DENIES Plaintiff's Motion for Reconsideration regarding Plaintiff's Title VII, ADEA, and H.R.S. § 378-2 retaliation claims on the basis that Plaintiff did not engage in a protected activity.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Reconsideration.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, December 18, 2013.



Alan C. Kay
Sr. United States District Judge

Ahuvia v. Wyndham Vacation Resorts, Inc., Civ. No. 10-00648 ACK-BMK: ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT, DATED NOVEMBER 13, 2013.